Robert L. SMITH, Conservator of the Conservatorship of Steven Morrice, Appellant,

v.

Duane HARRISON, Appellee.

No. 66525.

Supreme Court of Iowa.

Oct. 27, 1982.

Morris C. Hurd, Ida Grove, for appellant.

John P. Duffy of Connell & Duffy, Storm Lake, for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

McCORMICK, Justice.

This case is an action in equity by a conservator who seeks cancellation of a

farm lease entered by his ward. Plaintiff Robert L. Smith is conservator of Steven Morrice. The principal conservatorship asset is a 320-acre Ida County farm which Morrice leased in 1975 to defendant Duane Harrison for ten years at an annual cash rental of $23 per acre. The conservatorship brought this action in 1979, one year after the voluntary conservatorship was established. In attacking the lease, the conservator relied on theories of fraud, undue influence, unjust enrichment, and unconscionability. Harrison counterclaimed. After trial, the court found insufficient evidence to support either the petition or counterclaim and entered judgment accordingly. The conservator appealed and Harrison cross-appealed. The court of appeals affirmed on the conservator's appeal by operation of law because of a two-to-two division, one judge not participating. All participating judges voted to affirm on the cross-appeal. We granted further review on the conservator's appeal only. We now affirm the court of appeals.

Because the action is an effort to set aside a written instrument affecting real estate, the conservator had the burden to establish his entitlement to relief by clear, satisfactory and convincing proof. *See McCarter v. Uban,* 166 N.W.2d 910, 912 (Iowa 1969).

We recite the facts as we find them in our de novo review. Harrison has farmed the Morrice farm since 1967, succeeding his father as tenant. He grew up on the farm. He first farmed under a cropshare lease and in 1973 entered a five-year cash rental lease providing for rental of $23 an acre.

In the fall of 1975 Morrice asked Harrison if he would like to buy the farm, and Harrison said he would if they could agree on a price and he could obtain financing. They discussed the subject several times, and Harrison investigated possible financing. Morrice did not set a price on the farm, however, but instead suggested they enter a long-term lease during which they might be able to work out a sale. He made it very clear he wanted Harrison to farm the land whether he bought it or not. The two men went together to the office of Ida Grove attorney Daniel Williamson who, at their request, prepared the ten-year lease at issue here, which they executed.

Morrice was 85 years old when the lease was executed. At the time of trial he was 90 years old and resided in a nursing home. Although the conservator did not assert he was incompetent, Morrice did not testify by deposition or in person. The conservator claimed Morrice was barely literate, feeble in mind and body, and suffered from near blindness at the time the lease was executed. No medical evidence was offered in support of this claim, and the only witnesses who offered any support for it were the conservator and the conservator's daughter. Defense witnesses testified that at the time the lease was executed Morrice drove an automobile, went to town on a daily basis, conversed about crops and weather, was alert, kept track of grain prices, and took care of his business affairs. Attorney Williamson testified that Morrice was alert and "very definitely appeared to know what he was doing" when he directed Williamson to prepare the lease. The terms were discussed before the lease was executed.

The conservator offered testimony of an expert farm manager who said that a fair and reasonable rental for the farm in 1975, based on its corn suitability rating, was $70 an acre. Harrison testified that, in keeping with Morrice's wishes, he farmed the land "lightly," keeping half of it in hay and pasture and rotating hay and crop ground. Approximately 276 acres of the land were available for hay and crops. Harrison also offered evidence showing cash rental rates on neighboring farms that witnesses said were comparable to the Morrice farm. One rental from 1958 to 1975 was at $14 per acre, one from 1973 to 1975 at $25 per acre, and one from 1976 to 1978 at $30 per acre.

I. *Actual and constructive fraud.* The elements of actual fraud are delineated in *Beeck v. Kapalis,* 302 N.W.2d 90, 94 (Iowa 1981), and principles of constructive fraud are discussed in *Curtis v. Armagast,* 158 Iowa 507, 520–21, 138 N.W. 873, 878 (1912). We find a failure of proof of fraud on either basis in this case.

II. *Undue influence.* To establish undue influence it was necessary for the conservator to prove that Harrison utilized unfair persuasion sufficient to overcome Morrice's free agency in obtaining the lease. *See Stephenson v. Stephenson,* 247 Iowa 785, 797, 74 N.W.2d 679, 686 (1956). The conservator's proof failed on this theory also.

III. *Unjust enrichment.* Unjust enrichment is a doctrine of restitution. *See Glass v. Minnesota Protective Life Insurance Co.,* 314 N.W.2d 393, 397 (Iowa 1982). The conservator's unjust enrichment claim begs the question in the present case. Any benefits received by Harrison were received pursuant to the lease. It was not unjust for him to receive them unless the lease should be set aside. Thus a ground for invalidating the lease must be established before a basis for restitution exists.

IV. *Unconscionability.* The conservator's unconscionability theory rests on his characterization of Morrice's 1975 mental and physical condition and the rental value of the farm. We do not find clear, satisfactory and convincing evidence to support this characterization. At most the evidence shows Morrice made a bad bargain when, at his advanced age, he entered a long-term farm lease for substantially less cash rent than he reasonably should have been able to obtain. The unconscionability doctrine does not exist, however, to rescue parties from mere bad bargains.

Originally the doctrine was available only in equity as a defense to specific performance. When the defense rested on asserted inadequacy of consideration, specific performance would not be denied unless the inadequacy was "so gross as to shock the chancellor's conscience." *See Scott v. Habinck,* 188 Iowa 155, 162, 174 N.W. 1, 3 (1920); 5A Corbin, Contracts § 1165 (1963). It was not enough that a party made an imprudent bargain:

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Carlson v. Hamilton,* 8 Utah 2d 272, 274–75, 332 P.2d 989, 990–91 (1958).

We now recognize the doctrine in law as well as equity but have accepted its limitations. A bargain is unconscionable "if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " *Casey v. Lupkes,* 286 N.W.2d 204, 207 (Iowa 1979) (quoting *Hume v. United States,* 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393, 396 (1889)). The doctrine is recognized in Restatement (Second) of Contracts § 209 (1979) and is available as a defense under the Iowa Uniform Commercial Code. *See* Iowa Code § 554.2302 (1981). Because of its equitable purpose, neither the courts nor the legislature have attempted to give it a precise definition. *See* 15 S. Williston, A Treatise on the Law of Contracts § 1763A (3d ed. W. Jaeger 1972).

In the present case, although the issue is not free from doubt, we agree with the trial court that the conservator did not prove the lease is unconscionable.

DECISION OF COURT OF APPEALS AFFIRMED.